Charles MARCUS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 26281.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1970.

W. B. West, III, Clark, West, Keller, Clark & Ginsberg, Dallas, Tex., for appellant.

Eldon B. Mahon, U. S. Atty., Merrill L. Hartman, Asst. U. S. Atty., Dallas, Tex., Richard B. Buhrman, Mitchell Rogovin, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

**LEWIS R. MORGAN, Circuit Judge:**

This is an appeal from a conviction for failure to file individual tax returns for the years 1959, 1960 and 1961, as required by Section 6012(a) (1) of the Internal Revenue Code of 1954, 26 U.S.C. § 6012(a) (1),[1] in violation of Section 7203 of the Code, 26 U.S.C. § 7203.[2] We hold that the cumulative effect of the District Court's errors, which are discussed in detail below, when taken together, require that this case be reversed and remanded to the District Court for a new trial, even though no single error, when viewed in isolation, would necessarily require this disposition. See Getchell v. United States, 5 Cir., 1960, 282 F.2d 681, 691.

Joseph Brandstetter, the Special Agent of the Internal Revenue Service who headed the investigation against Marcus and who was the Government's principal witness, used a set of notes in testifying which he had specially prepared for the purported purpose of refreshing his memory at the trial from the memoranda he had made shortly after each interview with Marcus. At the beginning of his cross-examination of Brandstetter, defense counsel asked to see the notes to which Brandstetter had been referring during the direct examination. The Government objected to this request on the ground that defense counsel had already been supplied with all the interview memoranda upon which the notes were based. The District Court, after examining the notes, sustained the ob-

1. Section 6012 provides:
   *Persons required to make returns of income*
   (a) *General rule.*—Returns with respect to income taxes under subtitle A shall be made by the following:
   (1) Every individual having for the taxable year a gross income of $600 or more * * *.

2. At the time of Marcus' trial, Section 7203 provided:
   Any person required under this title to pay any estimated tax or tax, or required by the title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned no more than 1 year, or both, together with the costs of prosecution.

jection. In response to a question posed to Brandstetter on cross-examination, the Govenment's counsel admitted that he had been in possession of a copy of the notes while examining Brandstetter. Defense counsel then asked Brandstetter if the Government's counsel "has been asking you the questions from those same notes and your answers are on the paper that you have in your pocket there". To this Brandstetter replied:

Well, the answers are not verbatim. They are answers—they are the items that we intended to get into the answers in my testimony. (Transcript 354).

Marcus contends that the District Court erred in refusing to permit defense counsel to examine the notes relied upon by witness Brandstetter. The Government counters by arguing that copies of all the interview memoranda had been turned over to the defense prior to trial and, since the notes were based on these memoranda, the defense had everything needed to test the accuracy of Brandstetter's testimony on cross-examination, so that, even if the denial was error, it did not affect the substantial rights of the parties and was harmless. See Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A.

■■ It is well settled that if a witness uses any paper or memoranda while he is on the stand to refresh his memory in giving his testimony, the opposing side, upon proper demand, has the right to see and examine that paper or memoranda and to use it in cross-examining the witness. Montgomery v. United States, 5 Cir., 1953, 203 F.2d 887, 894. Accord, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 232, 60 S.Ct. 811, 84 L.Ed. 1129, 1173 (1940). It is also true, as the Government points out, that the Court in *Montgomery* stated that a conviction will not be reversed for denial of the right to examine such notes and memoranda if the error does not affect the substantial rights of the parties. However, it is important to note that the Court in *Montgomery* held that the denial of the right to examine notes with which it was confronted *was* reversible error because the witness had apparently relied on the notes to a great extent and his testimony was material and highly damaging.

■ There is no doubt that the District Court committed error in denying defense counsel's request to see Brandstetter's notes; the question is whether the error is sufficiently grievous to constitute reversible error. As in *Montgomery*, the witness apparently relied on the notes extensively and his testimony was material and highly damaging, but in this case the defense had copies of the memoranda upon which the notes were based and, supposedly, was thus in a position to test effectively the accuracy of Brandstetter's direct testimony on cross-examination. It is possible, however, that being unable to see the notes and examine Brandstetter with them, the defense was unable to effectively inquire into whether Brandstetter was testifying from present recollection or whether the notes were being used erroneously as past recollection recorded, see United States v. Riccardi, 3 Cir., 1949, 174 F.2d 883, or whether the notes, being used by both the examining counsel and the witness, constituted a sort of script, see N. L. R. B. v. Federal Dairy Company, 5 Cir., 1962, 297 F.2d 487, 489, and Jewett v. United States, 9 Cir., 1926, 15 F.2d 955. These possibilities tend to lead to the conclusion that the error here affected the substantial rights of Marcus and demands reversal, but when taken cumulatively with the other errors in this case, this conclusion need not be reached. Upon the retrial of this case, the District Court should exercise great caution to see that these trial notes are not misused.

■ The Government introduced evidence of specific expenditures made by Marcus during the prosecution years, including a trip to Europe, the purchase of carpeting, the hiring of an interior decorator, bills from an exclusive department store, the purchase of an expensive wrist watch band, house payments, utility payments, household expenses and the pur-

chase of a home. The purpose of this evidence was limited by the Government to show expenditures of sufficient size by Marcus so that he must have known he had over $600.00 a year in gross income during the years involved. The defense objected to the admission of this evidence on the ground that no foundation had been laid by the Government to show that such expenditures were not made from prior accumulations, loans, gifts or the separate estate of Mrs. Marcus by establishing an opening net worth as of January 1, 1959, and, consequently, the evidence was not relevant on the issue of wilfulness.

It was apparently the Government's hope that the jury would infer from the fact that Marcus spent in excess of $600.00 in each of the prosecution years that he had to be aware that he had a gross income in excess of $600.00. But this inference cannot logically follow unless, from the fact that these expenditures were made, it is shown that they were made out of taxable income, and not from prior accumulations, gifts, etc. The Government failed to lay any foundation to indicate that the expenditures came out of current income, and, for this reason, the jury could not infer that Marcus had a gross income in excess of $600.00 out of which the expenditures had been made, and further, that, by making the expenditures, he had to know he had a gross income in excess of $600.-00. As was said in Dupree v. United States, 5 Cir., 1955, 218 F.2d 781, 784: "If there is no established figure showing the source from which expenditures during the year can be made, or the complete lack of such source, then there is no relevance to proof of expenditures during the year, no matter how large they may be". See Blumberg v. United States, 5 Cir., 1955, 222 F.2d 496, 499–500; Bryan v. United States, 5 Cir., 1949, 175 F.2d 223.

The Government cites several cases which support the proposition that wilful intent to evade taxes may be shown circumstantially from the conduct of the defendant, such as keeping a double set of books and records, making false entries or alterations, concealing assets, covering up sources of income, and any other conduct, the likely effect of which would be to mislead or conceal. Graves v. United States, 10 Cir., 1951, 191 F.2d 579, 582. See e. g. United States v. Zimmerman, 7 Cir., 1939, 108 F.2d 370. But these cases are of no avail. Evidence of specific expenditures in a given year is not evidence of conduct the likely effect of which would be to mislead or conceal, nor, without further explanation, is it evidence of wilful intent. Likewise, it does the Government no good to argue that the evidence of expenditures is relevant to show that Marcus' financial condition was not desperate, as he later testified it was during the prosecution years, thereby attacking his credibility, because when the expenditures were admitted the Government was still putting on its case in chief, the defense was yet to be heard, and Marcus had testified to nothing. In such a situation, a foundation showing an opening net worth is still necessary to make the expenditure evidence relevant.

The District Court admitted into evidence over defense objection a letter from the Chief of the Intelligence Division to Marcus which Special Agent Brandstetter found in the Internal Revenue Service file on Marcus when he took over the investigation. The letter was dated April 15, 1963, and inquired as to whether Marcus had filed an income tax return in the years 1959, 1960 and 1961. In the space for the signature, the file copy of the letter bore a rubber stamp legend reading "(Signed) James M. Cooner", which was immediately followed by the initials "RLW". The next line read "Chief, Intelligence Division". In his testimony, Marcus denied ever receiving this letter.

■■ The apparent purpose of this piece of evidence was to show that the Internal Revenue Service had inquired of Marcus why he did not file returns in the prosecution years and that Marcus had ignored the inquiry, which would go

to show wilful intent. In laying a foundation for the admission of the file copy of the letter, under the business records exception to the hearsay rule, 28 U.S.C. § 1732, the Government introduced testimony that the file copy was a record which the Internal Revenue Service kept in the regular course of its business over which Brandstetter had supervision and custody. Marcus contends that this foundation was insufficient because there was nothing to indicate that the original letter had in fact been mailed. We agree. The mere presence of a copy of a letter in a file kept in the regular course of business is not sufficient to raise a presumption of mailing; the custodian of the file must testify as to what was the regular practice in the office as to mailing letters and filing carbon copies, such as marking or initialling copies of letters which have been mailed, and then indicate that the file copy shows that the regular course of mailing was followed with regard to the particular letter. Sheehan v. Municipal Light & Power Co., 2 Cir., 1945, 151 F.2d 65, 69.

■ Marcus contends that there was multiple error in the handling of the summary testimony of Agent Brandstetter and in the introduction of related summary exhibits. Of these, the only contention serious enough to merit discussion is that the jury was permitted to examine copies of summary exhibits which contained figures which had been deleted from the original exhibits. Apparently, the jury was given copies of the Government's summary exhibits at the beginning of the summary testimony and that as certain items were deleted from the summary as not reflecting the state of the evidence, the original summary exhibits were altered to reflect the deletions, but the jury was merely instructed to disregard certain figures and columns on their copies and their copies were in no way altered to reflect the deletions. Needless to say, this is an inherently dangerous practice, because, as the Supreme Court said in Holland v. United States, 348 U.S. 121, 128, 75 S.Ct. 127, 99 L.Ed. 150 (1954) "bare figures have a way of acquiring an existence of their own, independent of the evidence which gave rise to them". Cf. Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, 16–17; Steele v. United States, 5 Cir., 1955, 222 F.2d 628, 630–631.

■■ Marcus makes much out of the fact that he was not given a *Miranda* warning nor expressly told of the criminal nature of the investigation against him until after he had supplied the Internal Revenue Service with his financial records and made damaging admissions to the investigating agents. There is testimony in the record, however, that at the first interview the Internal Revenue Service agents informed Marcus that they were Special Agents attached to the Intelligence Division, which handles only criminal investigations, that he had a right to remain silent, and that anything he said could be used against him. Likewise, it is undisputed that the agents failed to inform Marcus that he had the right to an attorney, as they were required to do if Marcus was entitled to a *Miranda* warning.

Marcus here contends that the safeguards of constitutional protections required by Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), apply to noncustodial tax fraud investigations and that the trial court erred in refusing to exclude evidence obtained in violation of his privilege against self-incrimination and his right to assistance of counsel. In a criminal tax fraud case, this Court has recently held that the *Miranda* doctrine applies only to in-custody interrogation. Agoranos v. United States, 5 Cir., 1969, 409 F.2d 833. Since Marcus was at no time in custody during the Internal Revenue Service investigation, the contention is without merit.

Marcus' remaining contentions are without merit and do not require discussion.

This case is reversed and remanded to the District Court for the Northern District of Texas for a new trial.

Reversed and remanded.