**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Guido Anthony PENOSI, Defendant-**
**Appellant.**

**No. 31151.**

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1971.

Rehearing Denied Jan. 7, 1972.

Certiorari Denied April 17, 1972.
See 92 S.Ct. 1495.

Daniel H. Greenberg, New York City, for defendant-appellant.

Robert W. Rust, U. S. Atty., Marsha L. Lyons, Asst. U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Joseph H. Reiter, Crombie J. D. Garrett, Attys., Tax Div. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Guido Anthony Penosi appeals his conviction for failure to file personal income tax returns and for wilful tax evasion. After considering all the assignments of error, we affirm the conviction.

Penosi was charged in an eight-count indictment with tax violations in the years 1964, 1965, 1966 and 1967. Four counts of the indictment alleged failure to file tax returns for each of these years in violation of 26 U.S.C. § 7203,[1] and the other four counts charged wilful evasion of income tax for the same years in violation of 26 U.S.C. § 7201.[2] At the trial before a jury the government introduced undisputed evidence that Penosi enjoyed income which, if derived from taxable sources, would be subject to taxation as follows:

|      | Taxable Income | Tax Due |
|------|---------------|---------|
| 1964 | $ 7,853.70    | $1,450.74 |
| 1965 | 11,313.81     | 2,109.04 |
| 1966 | 17,096.70     | 3,567.08 |
| 1967 | 18,382.63     | 2,562.95 |

1. Section 7203 of Title 26, U.S.C.:
"Any person required under this title to pay any estimated tax or taxes, or, required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or taxes, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

2. Section 7201 of Title 26, U.S.C.:
"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

Using the expenditure method of proof the government established these figures by presenting real and testimonial evidence of Penosi's cash disbursements during the years in question and then subtracting any expenditures made out of accumulated funds or nontaxable sources.

In support of its assertion that Penosi's income derived from taxable rather than non-taxable sources, the government called Agent Dennis J. Jaster to the witness stand. Jaster testified that in his capacity as special agent for the Internal Revenue Service he conducted an intensive investigation in an effort to determine the source of Penosi's expenditures. The investigation covered all banks, brokerage houses, and relevant court records in the immediate area of Penosi's present home in Miami Beach, Florida, and in New York City where Penosi had resided previously. Agent Jaster also contacted credit bureaus and various friends and relatives of Penosi. However, in every instance the investigation failed to reveal any sizable assets held by Penosi prior to the 1964 tax year or any other non-taxable sources of income such as loans, gifts, bequests, etc. In fact, no one contacted by Jaster, including Penosi's relatives, was able to state exactly what Penosi did for a living.

At the close of the government's case Penosi presented no evidence but argued to the jury that the government failed to meet its burden of proving that the expenditures came from taxable income. The jury disagreed and returned a verdict of guilty on all eight counts. The district judge then imposed a sentence totalling three years and nine months.

On appeal Penosi contends that under this court's decision in Marcus v. United States, 5 Cir. 1970, 422 F.2d 752, the government is required to pinpoint a taxable source of income in order to sustain a conviction for tax evasion. Appellant's interpretation of *Marcus* is misplaced. In that case we held that the government did not prove its case by showing only that the defendant had yearly expenditures in excess of $600.00. In addition, we held the government must establish, either directly or inferentially, that the expenditures were made from a taxable source of income.

Proof of a taxable source may take several different forms according to the nature of the defendant's financial activities. The most obvious method of proving a taxable source would be to present evidence of the precise origin of the income, for example, a cancelled check by which a certain employer paid a defendant for services rendered.

However, when such evidence is not available, the government must resort to other methods of proof. In this type of case the government has to establish at the outset what was not shown in Marcus v. United States, supra, that is, the defendant's net worth at the beginning of the time period in which he allegedly failed to file a tax return. Requiring the government to show an opening net worth is simply a requirement that the government prove to a reasonable certainty that the income expended did not spring from prior accumulations or earnings for which the defendant would not be liable in taxes.

Next, the government has the burden of proving that the expenditures did not come from other non-taxable sources such as gifts, loans, bequests, or favorable law suit verdicts. Since this is actually a burden to negate certain possible facts, the government may meet the burden by producing evidence of an investigation which uncovered no sources of non-taxable income. Again, in Marcus v. United States, supra, there was no investigation showing that the expenditures were not made from tax exempt funds.

Thus, in cases where direct evidence of taxable sources is lacking, the government must negate the sources of non-taxable income by establishing an opening net worth and then showing, by investigation or otherwise, an absence of

additional non-taxable sources. In this manner the government carries its burden of presenting evidence from which the trier of fact might reasonably conclude to the exclusion of all other reasonable hypotheses that the expenditures came from taxable sources.[3] The decision in Marcus v. United States, supra, applied this test and properly reversed the conviction for the reason that the government failed to negate non-taxable sources:

> "If there is no established figure showing the source from which expenditures during the year can be made, *or the complete lack of such source*, then there is no relevance to proof of expenditures during the year, no matter how large they may be." (Emphasis supplied). 422 F.2d at 755.
>
> Quoting from Dupree v. United States, 5 Cir. 1955, 218 F.2d 781.

In conclusion then, the requirement that the government establish a taxable source does not mean, as appellant argues, that the exact origin of the expenditures must be put into evidence and proved beyond a reasonable doubt. The requirement means only that the government must prove that the expenditures did not come from tax exempt sources.

Turning to the case at hand, we find that the government met its burden of proof by establishing the very two elements which were not established in Marcus v. United States, supra. Agent Jaster testified that he found Penosi's opening net worth to consist of but one mortgaged automobile, and that he discovered no other sources of non-taxable income. Applying the standards outlined above, this was all the government was *required to prove to sustain the* jury's verdict.

■ Penosi's next contention is that the evidence was insufficient to support his conviction because the investigation was not thorough enough to rule out all the non-taxable sources of income that Penosi might have in places other than the Miami Beach and New York City areas. We find no merit in this argument. Once expenditures are established, the government cannot be expected to conduct an exhaustive nationwide investigation when the defendant supplies no relevant leads as to where he got the money he admittedly spent. See Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. Under the circumstances of this case, the government agent did enough to carry the burden of proof when he interviewed friends and relatives and checked with financial and governmental institutions at both the present and former residences of the defendant.

Nothing we have said is meant to imply that Penosi had the burden to supply information to the government or to testify in court concerning the source of his expenditures. The burden of proving a taxable source remained on the government throughout the trial. But when the results of the investigation were put into evidence, the government established a *prima facie* case, and by remaining silent, Penosi took the risk that the jury would believe the government's witnesses and find him guilty. As the Supreme Court stated in Holland v. United States, supra, the defendant who remains silent in a prosecution for tax evasion often does so "at his peril":

> "But where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant . . . .
>
> "Nor does this rule shift the burden of proof. The Government must still prove every element of the offense beyond a reasonable doubt though not to a mathematical certainty. The settled

---

3. This Circuit's standard for testing the sufficiency of circumstantial evidence has been well-delineated. *See, e. g.,* Vick v. United States, 5 Cir. 1954, 216 F.2d 228; Davis v. United States, 5 Cir. 1971, 443 F.2d 560, 1971 and United States v. Willoz, 5 Cir. 1971, 449 F.2d 1321.

standards of criminal law are applicable to net worth cases just as to prosecutions for other crimes. Once the Government has established its case, the defendant remains quiet at his peril."

348 U.S. at 138, 139, 75 S.Ct. at 137.[4]

We have carefully considered each of appellant's other contentions and find them without merit.

The judgment of the district court is therefore in all respects

Affirmed.

---

4. In *Holland*, the government was able to demonstrate a likely source of taxable income which was not shown in the case at bar. However, four years after *Holland*, the Supreme Court granted certiorari in United States v. Massei, 1958, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517, to state in a brief per curiam that it had not meant to imply that proof of a likely source was a necessity in such cases. If the trier of fact finds guilt, the test on appellate review turns upon the sufficiency of the evidence under the circumstantial evidence test (See footnote 3).