**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Tommy HIETT, Defendant-Appellant.**

**No. 77–5214.**

United States Court of Appeals, Fifth Circuit.

Oct. 16, 1978.

Rehearing and Rehearing En Banc Denied Nov. 14, 1978.

Joseph S. Chagra, Towner Leeper, El Paso, Tex., for defendant-appellant.

Jamie C. Boyd, U.S. Atty., Le Roy Morgan Jahn, W. Ray Jahn, Charles J. Muller, III, Wayne F. Speck, Asst. U.S. Attys., San Antonio, Tex., Richard B. Buhrman, Malcolm Logan, Atty., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before COWEN *, Senior Judge, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from a conviction for two counts of income tax evasion in violation of 26 U.S.C. § 7201.

Evidence presented at trial showed that from 1964 to 1970 appellant Hiett's chief source of income was a divorce consulting firm. During this time appellant routinely paid his bills by check. The divorce consulting firm closed in late 1970 or early 1971.

At about that time appellant began paying for everything in cash, including such large purchases as a house and an airplane. He filed no individual tax returns for 1971 or 1972. This led the government to investigate his tax liabilities for those years.

In its investigation the government used the net worth method of reconstructing income. Under that method the IRS showed substantial increases in appellant's net worth for the years in question and found that appellant had taxable income of $16,-000 in 1971 and $28,000 in 1972. Appellant did not cooperate in the investigation, nor did he offer any explanation for his increased net worth. The jury found him guilty of income tax evasion for the years of 1971 and 1972. He appeals.

I.

The principal issue raised on appeal concerns the government's burden of proof in a criminal prosecution for income tax evasion. To establish a § 7201 violation, the government must prove (1) the existence of a tax deficiency, (2) an affirmative act constituting an evasion or attempted evasion of the tax due, and (3) willfulness. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Because a § 7201 violation is a criminal offense, the government must prove each element of the crime beyond a reasonable doubt. On appeal Hiett contends that the government failed to prove beyond a reasonable doubt that there was a tax deficiency.

To establish a tax deficiency, the government must show first that the taxpayer had unreported income, and second, that the income was taxable. The government has several customary ways of overcoming the first hurdle. Here it used the net worth method of reconstructing income.[1] Appel-

---

* Senior Judge of United States Court of Claims, sitting by designation.

1. To establish unreported income under the net worth method, the government must establish the taxpayer's net worth at the beginning of the tax year in question. Then the government must establish the taxpayer's net worth at the close of that year. It subtracts the former figure from the latter to show the taxpayer's increase in net worth for the year in question. This figure is further adjusted by (1) adding to it the taxpayer's nondeductible personal expenditures for the year and (2) subtracting from it the taxpayer's allowable deductions. If, as in appellant's case, the taxpayer filed no

lant does not contest the government's calculations under that method.

The government, however, does not satisfy its burden of proving a tax deficiency simply by showing that the taxpayer had unreported income for the year in question. In addition, the government must prove that the unreported income was *taxable* income. This is the aspect of the government's case which appellant contests. Under the Supreme Court's decisions, the government can satisfy this burden in either of two ways. It can show that there is a likely taxable source of the unreported income, *Holland v. United States*, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954), or it can negate all possible nontaxable sources of that income. *United States v. Massei*, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). Since the government concedes that it did not establish a likely taxable source of appellant's unreported income, the issue narrows to whether the government negated all possible nontaxable sources within the meaning of *Massei*. If it did, the income must have come from a taxable source.

It is impossible, of course, to negate every *possible* nontaxable source. In the typical case, the taxpayer gives the IRS "leads" to possible nontaxable sources. Some cases have held that the government satisfies its burden if it negates each of these leads. *E. g., Kramer v. Commissioner of Internal Revenue*, 389 F.2d 236 (7th Cir. 1968). Here, however, appellant provided no leads for the government to negate. He notes that the self incrimination clause of the fifth amendment and the requirement that the government bear the burden of proof in criminal prosecutions prevent the government from forcing him to provide leads. He seems to suggest that taxpayers who provide leads to the IRS stipulate that the search for nontaxable sources can be narrowed to an investigation of just those

leads. This permits the government to convict those taxpayers by simply negating their proffered leads. Because appellant provided no leads, he argues that the search cannot be narrowed and the government must negate every possible source of nontaxable income. Since that is an impossible task, appellant contends that he cannot be convicted.

To adopt appellant's position would require the government to exhaust the inexhaustable—to conduct an absolutely limitless investigation. It would cast the government in the role of a conjurer, forcing it to pull nontaxable sources out of a hat. Appellant would require the government to embark on a Magellan-like expedition in order to prove that the unreported income was taxable. Not only would the government have to circle the globe in its search, it would also have extraorbital responsibility, since appellant's position requires it to prove a cosmic negative. To state appellant's position is to establish its absurdity. If *Massei* and *Holland* are to have viability in our jurisprudence, they cannot be read to sanction such a result.

Our cases adequately rebut appellant's position. In *United States v. Boulet*, 577 F.2d 1165 (5th Cir. 1978) and *United States v. Penosi*, 452 F.2d 217 (5th Cir. 1971), both prosecutions for income tax evasion, we held that the government satisfies its burden of proving that income is taxable if it conducts a thorough investigation that fails to disclose any nontaxable source. Appellant would have us distinguish *Penosi* and *Boulet*. In those cases, he correctly asserts, the government did not use the net worth method to prove that the taxpayer had unreported income. The government used the expenditures method in *Penosi* and the bank deposits method in *Boulet*.[2] However, appellant's attempted distinction fails. It confuses the first issue, whether the tax-

---

return for the year in question, this "adjusted net worth increase" is presumed to be the taxpayer's unreported income for that year. *See Holland v. United States*, 348 U.S. 121, 125, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

2. In both cases the government established that the taxpayer's opening net worth was too small to account for his expenditures or bank deposits. This justified the conclusion that the taxpayer had unreported income.

payer had unreported income, with the second issue of whether the income was taxable. Whatever method the government uses to answer the first question, the inquiry into possible nontaxable sources is wholly distinct. Thus *Penosi* and *Boulet* are indistinguishable on this issue, and they control this case. With the addition of *Hiett*, the *Penosi* and *Boulet* twins become triplets. We therefore hold that in an income tax evasion case based on the net worth method of proof, when the taxpayer gives no leads as to nontaxable sources, the government satisfies its burden of negating all possible nontaxable sources within the meaning of *Massei* by showing that it conducted a thorough investigation that failed to reveal any nontaxable source.

For purposes of this standard, a thorough investigation must be, of course, one which removes any reasonable doubt that the defendant's unreported income came from nontaxable sources. In this case the government made such an investigation. It contacted banks and third parties—including appellant's family—in an attempt to find out if appellant received any income by gift, loan, inheritance, or other nontaxable source. The government located no nontaxable sources that could account for appellant's unreported income. As we explained in *Penosi*,

> the government cannot be expected to conduct an exhaustive nationwide investigation when the defendant supplies no relevant leads . . . the government agent did enough to carry the burden of proof when he interviewed friends and relatives and checked with financial and government institutions at both the present and former residences of the defendant.

*United States v. Penosi*, 452 F.2d at 220.

We wish to emphasize that our holding in no way shifts the burden of proof to the defendant. He is not required to supply leads or testify in court. The burden of establishing a taxable source remains on the government throughout the trial. But, as we stated in *Penosi*, once "the results of the investigation were put into evidence,

the government established a *prima facie* case, and by remaining silent, . . . [the defendant] took the risk that the jury would believe the government's witnesses and find him guilty." *Id.* After the government establishes its *prima facie* case, the taxpayer defendant—like all other defendants—"remains quiet at his peril." *Holland v. United States*, 348 U.S. 121, 138–39, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

## II.

■ Appellant raises another issue on appeal related to the government's burden of proof. He contends that the district court erroneously placed the burden of proof on him to show that his expenditures were for business and not personal purposes. In other words appellant argues that the government, to carry its burden of proof in a prosecution for income tax evasion, must prove that the defendant has no unclaimed deductions.

We hold that the district court correctly placed the burden of proving deductions on appellant. The law in this area is clear. In a prosecution for income tax evasion, once the government has established the defendant's unreported income and has allowed both the deductions that the defendant claims and those that it can calculate without the defendant's assistance, it is not then required to prove that the defendant has no other deductions. The burden of proving additional deductions is on the defendant. *United States v. Garguilo*, 554 F.2d 59, 62 (2d Cir. 1977); *Siravo v. United States*, 377 F.2d 469, 473 (1st Cir. 1967); *McClanahan v. United States*, 292 F.2d 630, 632 (5th Cir. 1961); *United States v. Stayback*, 212 F.2d 313, 317 (3d Cir. 1954).

## III.

■ The third issue raised on appeal is whether the trial court correctly admitted into evidence certain testimony of an IRS agent who investigated the appellant. The disputed colloquy between the prosecutor and the agent is as follows:

Q: During the course of your investigation, how did you proceed? What did you do?

A: We attempted to interview Mr. Hiett and—

. . . . .

Q: And did you meet with Mr. Hiett and Mr. Leeper [appellant's attorney] at that time?

A: Yes, we did.

Q: Did you inform Mr. Leeper and Mr. Hiett that you were investigating tax liabilities of Mr. Hiett?

A: Yes.

. . . . .

Q: All right. After informing him of the investigation, what, if anything, happened? Did Mr. Leeper continue the interrogation at that time or the conference at that time?

A: No, sir, the interview was terminated at that point.

Q: All right. Did you have occasion during your investigation thereafter to ever meet again with Mr. Leeper or Mr. Hiett?

A: No, I did not.

Appellant argues that under *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), the admission of this testimony constituted prejudicial error because it informed the jury that he had exercised his right to remain silent during the IRS investigation. In *Hale*, the defendant, while under arrest for robbery, exercised his right to remain silent when questioned by the police as to the source of money found on his person. At trial the defendant explained that his ex-wife had given him the money. The Supreme Court held, under its advisory power over federal courts, that in this case it was prejudicial error for the trial court to permit cross examination of the defendant concerning his silence during the police interrogation. The court so held because it found that the probative value of the testimony regarding the defendant's pre-trial silence was outweighed by the prejudicial impact of admitting it into evidence. *Id.* at 180, 95 S.Ct. 2133.

We cannot hail the *Hale* case into the *Hiett* trial. *Hale* does not control this case.

The testimony the appellant complains of was not nearly as prejudicial as was the testimony at issue in *Hale*. Here, the disputed testimony was not even a clear comment on the appellant's exercise of his right to remain silent. The witness merely stated that the interview was terminated and the parties never met again. It certainly does not have the prejudicial impact of testimony—such as that in *Hale*—indicating that an accused remained silent in the face of police interrogation at the time of arrest. *See· United States v. Griffin*, 530 F.2d 101, 103 (5th Cir. 1976).

Furthermore, the testimony in this case has greater probative value than the testimony challenged in *Hale*. In *Hale* the defendant's pre-trial silence was only probative on the issue of his credibility. And, as we have said, "doubt should not be cast upon [a defendant's] . . . credibility as a penalty for exercising his prerogative to make no statement to the arresting officer." *United States v. Impson*, 531 F.2d 274, 277 (5th Cir. 1976), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 803 (1978). In this case, however, the testimony about appellant's silence is probative, not on the issue of appellant's credibility, but on whether the government satisfied its burden of proof. As we explained, the government must show that it conducted a thorough investigation of the taxpayer's sources of income. If the taxpayer provides leads to nontaxable sources, the government must negate them. *Holland v. United States*, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Here, the challenged testimony simply allowed the government to show that it had asked appellant for leads and received none. In order to prove that it conducted the requisite thorough investigation, the government should be allowed to show that it sought out the person most likely to provide relevant leads. Thus it was instrumental to the government's case that it show that appellant provided no leads. While in *Hale* the challenged testimony was not so important to the prosecutor's case. We therefore hold that the trial court properly admitted the testimony.

## IV.

Appellant's final contention on appeal is that a portion of the prosecutor's closing argument constitutes reversible error. The challenged statements are those in which the prosecutor seems to vouch for the two IRS agent witnesses.[3]

As appellant contends, the trial court may commit reversible error by allowing a prosecutor to vouch for his witnesses in closing argument. *E. g., United States v. Arteaga-Limones*, 529 F.2d 1183, 1190 (5th Cir. 1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); *United States v. Brown*, 451 F.2d 1231, 1235 (5th Cir. 1971). But, to decide if such a closing argument constitutes reversible error, we must examine the argument as a whole in the context of the entire case. *United States v. Corona*, 551 F.2d 1386, 1388 (5th Cir. 1977). In this case the defense counsel, throughout his closing argument, attacked both the attitude of IRS agents toward appellant and the quality of their work. The prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel. *United States v. Millet*, 559 F.2d 253 (5th Cir. 1977); *United States v. Bursten*, 453 F.2d 605, 611 (5th Cir. 1971), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972); *United States v. Cohen*, 418 F.2d 68, 69 (5th Cir. 1969). Under the circumstances of this case, the government's remarks fall within the doctrine of fair reply.

Even if the prosecutor's remarks did not fall within the fair reply doctrine, we would not be convinced that they constitute reversible error. The thrust of the prosecutor's remarks was that the IRS agents did a commendable job. This, by any reasonable interpretation, would mean that they conducted a thorough investigation of appellant's fiscal affairs. Evidence of this was in the record, and whether the agents did a good or bad job was a proper subject for argument. We therefore hold that the challenged portions of the prosecutor's closing argument were not improper.

For these reasons the judgment of the district court is affirmed.

AFFIRMED.

---

**3.** The prosecutor said, "I am proud of these fellows that work long, hard hours for these United States. They try their dead level best to see that the proper taxes are collected, because I think its important that this Nation have a good defense . . . . [they] have done a commendable job."