[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14992
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20145-CMA-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERALD HUMBERT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 23, 2015)

Before ED CARNES, Chief Judge, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

A jury convicted Gerald Humbert for his role in a drug-trafficking operation.

Humbert argues that his conviction is impermissibly tainted by improper remarks

by the government and extraneous influences on the jury. Neither of his arguments warrants vacating his conviction.

At Humbert's jury trial, the government called his co-defendant, Antonio Norris, as a witness. Norris testified that he pleaded guilty before Humbert's trial, but had no plea agreement with the government and received no benefit for his plea. He further testified that he was not immune from prosecution for violent crimes and that his testimony could be used against him if he testified falsely.

On cross-examination, the defense questioned Norris about a recorded phone conversation in which a woman said Norris had killed someone. Norris explained that two men with guns had tried to rob him and he had killed one of them in the ensuing struggle. Norris testified that, although people had tried to rob him on numerous occasions, he didn't carry a gun. Norris later said that he had committed "no violent crimes, [and had] never committed any violent things in [his] life."

During closing arguments, the defense characterized Norris as an inveterate liar who would "say anything that he needed to say here in court so he can get a break in his sentence." In particular, the defense argued that Norris lied to the jury when he testified that he did not carry a gun and was not a violent person. The defense asserted that Norris lied about the violent crimes because he was subject to prosecution for any violent crimes he had committed.

2

In rebuttal, the government argued that Norris had no immunity for any violent crimes he may have committed, saying, "if he killed somebody, I hope he gets prosecuted for it."  The government went on to note that all participants in a conspiracy are liable for the foreseeable actions of their co-conspirators, so that, if "Norris killed someone, in furtherance of [the conspiracy in which Humbert was involved], there will not only be one defendant sitting at the table, there could very well be two."  The prosecutor explained that the government had "no interest" in failing to prosecute someone for an offense as serious as murder, and further remarked that he believed law enforcement took their responsibilities seriously and would not "hold back" if they had evidence that someone had committed murder.  Finally, the government stated that any unconfirmed murders "from [Humbert's] business" would "be answered [for]."  The defense immediately objected to the suggestion that "the murders that Antonio Norris committed have anything to do with [Humbert]."  In response to the objection, the district court promptly instructed the jurors to "rely on [their] recollection of the testimony in evidence."

While the jury was deliberating, it sent the district court a note explaining that a juror lived and worked in the area where the offenses occurred and was afraid "that a verdict endanger[ed] their life."  The court called the parties in and asked how they wanted the court to handle the note.  Humbert argued that the note "implie[d] somebody might have information about that area that they have

3

brought into the jury room," but also stated that he did not "know what that person who lives and works in the area may have said to the other jurors with regard to the area." He said that he wanted "to know whether or not this juror . . . discussed with the other members of the jury anything that was not introduced at the trial." Humbert therefore requested that the court individually question the juror to determine "what, if anything, he or she [] disclosed to the panel regarding the fear expressed." The court elected not to interview the juror, but agreed to instruct the jury "to consider only the evidence introduced at trial" and to advise the court if "anyone [had] introduced other matters into the deliberations."

Humbert moved for a mistrial, contending that the note showed that "extrinsic matters [had] been entered into the jury deliberations and that," contrary to the court's instructions, "the foreperson and all of the other jurors [had] decided not to disclose that to the court." Alternatively, Humbert asked that the district court interview the foreperson to ascertain which jurors might have been tainted by outside information. After a hearing, the court denied Humbert's requests, concluding that mere statements that jurors were concerned for their safety did not present the sort of danger that warranted a mistrial or juror interviews.

The jury eventually returned a verdict finding Humbert guilty on all counts. Humbert appeals that verdict, arguing: (1) that the government's closing statement

4

was riddled with improprieties, and (2) that the district court abused its discretion in denying his motion for a mistrial or an interview with the foreperson.

The government didn't engage in misconduct when it pointed out to the jury that Norris was still potentially criminally liable for any violent crimes he committed. That argument was permissible because it directly responded to the part of the defense's closing argument characterizing Norris as someone who would "say anything that he needed to say here in court so he can get a break in his sentence." One way to rebut that characterization was to remind the jury, as the government did, that Norris's testimony didn't entitle him to "a break in his sentence" or any other type of leniency. "The prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." United States v. Hiett, 581 F.2d 1199, 1204 (5th Cir. 1978). The government's argument that Norris was still criminally liable for violent crimes he committed — indeed, was likely to be prosecuted in the event there was evidence of those crimes — was permissible under the "fair response" doctrine.

The government's remark at trial, ostensibly linking Humbert to an uncharged killing, also does not warrant reversal. Remarks by the government are reversible error only if: (1) they are improper, and (2) they prejudicially affect the defendant's substantial rights. United States v. Reeves, 742 F.3d 487, 505 (11th Cir. 2014). "A defendant's substantial rights are prejudicially affected when a

5

reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). Assuming the government's remark about the killing was improper, Humbert hasn't shown substantial prejudice from the remark. It is unlikely the remark prejudiced Humbert's substantial rights because, immediately after the remark was made, the district court instructed the jurors to rely only on their recollection of the evidence presented at trial, instead of on the lawyers' arguments. When a district court takes a curative measure in response to possible prosecutorial misconduct, we will reverse only if the evidence is so prejudicial that it is incurable by that measure. United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009). The government's remark speculating about the killing doesn't rise to that level. It is also significant that, throughout the trial, the district court repeatedly instructed the jurors to consider only the evidence in the record, not the lawyers' arguments. We presume jurors follow instructions, United States v. Mock, 523 F.3d 1299, 1303 (11th Cir. 2008), which further diminishes the potential prejudice from the remark.

And the evidence of Humbert's guilt is overwhelming. The jury heard eyewitness testimony about Humbert discarding crack cocaine and a firearm, a recording of Humbert talking about drug trafficking, and extensive testimony from one of his co-conspirators about Humbert's role in the drug-trafficking operation.

6

Thus, even if the government's remark about the killing was improper, it did not affect Humbert's substantial rights.

That leaves Humbert's argument that the district court abused its discretion by denying his motion for either a mistrial or an interview with members of the jury. To prevail on such an argument, a defendant must make a colorable showing of improper extraneous influence on the jury. United States v. Alexander, 782 F.3d 1251, 1260 (11th Cir. 2015). Humbert has failed to make that showing here. The juror in question had simply stated that he or she lived and worked in the area where the offenses occurred and was afraid a verdict would endanger his or her safety. That information, without more, does not constitute concrete evidence that the juror introduced extraneous information into the deliberations. At most, it gives rise only to speculation about what else the juror might have said. "Where allegations are speculative or unsubstantiated," we have said, "the [district court's] burden to investigate does not arise." Id. at 1258. It's also significant that, in an abundance of caution, the district court did issue a curative instruction to the jury and directed the jurors to tell the court if anyone had introduced extraneous evidence into the deliberations. That instruction reduced the likelihood of prejudice from extraneous information. Humbert's contention that the jury may have ignored that instruction is just more speculation. See id.

**AFFIRMED.**

7