**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gregory P. DEAN, Defendant-Appellant.**

**No. 83–3172
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1983.

Julian J. Rodrigue, Brady M. Fitzsimmons, Covington, La., for defendant-appellant.

John P. Volz, U.S. Atty., Thomas L. Watson, Harry W. McSherry, Asst. U.S. Attys., New Orleans, La., David Marblestone, Wm. Bradford Reynolds, Jessica Dunsay Silver, Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Gregory P. Dean, a St. Tammany Parish Deputy Sheriff, appeals from a jury conviction of violating 18 U.S.C. § 242 [1] by using

---

1. 18 U.S.C. § 242 provides:

Whoever, under color of any law, statute,

excessive force under color of state law to strike and assault Ira Finley and thereby willfully depriving him of his constitutional rights. Dean was sentenced to one year imprisonment and a $240 fine. His sentence was suspended and he was placed on probation for three years. Dean appeals on the grounds that the government failed to prove the requisite intent, did not produce information concerning Finley's prior police brutality complaint or certain exculpatory statements and that he was prejudiced by the prosecution's implication that he was responsible for the disappearance of certain photographs.

On August 4, 1981 Finley, a black security guard, parked his car near a house he was interested in renting and walked in the street (there was no sidewalk) for about half a block until he entered the parking lot of a Sunbelt Realty office. During this walk he noticed a police car and exchanged glances with its occupants Dean and Reserve Deputy Sheriff Montague.

Once inside the realty office, Finley asked the manager, Perry Rucker, about the house. Rucker gave Finley the keys to the house and Finley left the office. Rucker, recalling that the house locks were jammed, followed Finley out to explain how to open the door to the house.

As they were leaving the office, Dean drove up and asked Rucker if he knew Finley. Rucker replied that he did not. Dean and Montague then got out of the car and Dean asked Finley for identification in what Finley described as a "hateful" manner and Rucker described as a "confronted tone." Both Montague and Dean testified that Finley answered Dean's questions with abusive language. Finley gave the officers his driver's license and was patted down. Montague returned to the police car to obtain a driver's license check.

In the meantime Rucker returned to his real estate office where he watched the unfolding incident from a large picture window approximately five feet from Dean and Finley. Rucker was joined by Cecilia Johnson and Patricia Glasscock, two other Sunbelt Realty employees. These witnesses had an unobstructed view of the scene but could not hear the conversation.

According to Finley, Dean tried to provoke Finley into striking him but Finley remained passive. This was corroborated by the witnesses, who testified that unlike Finley, who seemed submissive, Dean indicated that he wanted a confrontation. Dean, on the other hand, testified that Finley threatened that he would have Dean's job and that he then proceeded to arrest Finley for public intimidation.

Finley testified that when it became apparent to Dean that Finley would not attempt to strike the officer, Dean threw a punch at him striking him on the back of the head as he tried to avoid the punch, and that Dean then grabbed him by the hair and slammed his head into the roof of the car. Rucker testified that Dean hit Finley from behind and drove his head into the hood of the car. Both Johnson and Glasscock testified that Dean pushed Finley's head into the roof of the car. Finley testified that Dean began punching and kicking him and that Finley only tried to defend himself after Dean began to put him in a hammerlock. Johnson also testified that Dean began to kick Finley before he applied the hammerlock. All witnesses testified that Finley did nothing to Dean until Dean began to apply the hammerlock. Montague testified that he did not see the beginning of the fight.

The witnesses testified that Montague, on returning from the car, attempted to restrain Finley, while Dean was the aggressor. Finley and Johnson testified that

ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution of laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

Dean kicked Finley in the groin. Finley and all the witnesses testified that Dean struck Finley in the head with handcuffs. Montague testified that he did not see Dean hit Finley with the handcuffs but that Finley had two bumps on his head and was bleeding from his lip. Finley and Rucker both testified that Finley was also bleeding over one eye. The ordeal ended when Rucker came out of the office and told the officers to stop. Rucker, Johnson and Glasscock filed written complaints concerning Dean's conduct.

At the police station Dean took several photographs of Finley and attached these photos to his report. These photos were missing at the time of the trial.

Dean contends that the government failed to prove that he "willfully" deprived Finley of a constitutional right. Dean does not challenge the trial court's jury instructions concerning willfulness and specific intent under 18 U.S.C. § 242. Indeed these instructions were almost identical to those we approved in *United States v. Stokes*, 506 F.2d 771, 776 (5th Cir.1975). Here the jury was instructed that:

> With regard to his elements of willfullness I instruct you that an act is done willfully if it is done voluntarily and intentionally and with a specific intent to do something that the law forbids, that is with bad purpose to disobey or disregard the law. The specific intent required to convict of this crime is the intent to deprive a person of a Constitutional right.

■ Instead Dean argues that willfulness can only be satisfied if Dean used force as a form of summary punishment to in effect deprive the victim of a trial. We rejected this argument in *Stokes* where we held that:

> ... the constitutional right to due process of law includes not only the right to be tried in a court of law for alleged offenses against the state, but also a right not to be treated with unreasonable, unnecessary or unprovoked force by those charged by the state with the duty of keeping accused and convicted offenders in custody. This aspect of due process

has been made specific by court decisions and is thus within the purview of rights protected by the criminal sanctions of 18 U.S.C. § 242.

*Id.* at 776. Thus, contrary to Dean's assertions, excessive force can be the basis of a conviction under 18 U.S.C. § 242. Of course, we do not weigh the evidence but only decide whether a reasonable juror could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Reed*, 715 F.2d 870, 873 (5th Cir. 1983). There is little question but that a juror could have found that Dean willfully used excessive force against Finley.

■ Dean contends that a mistrial should have been granted because the government disobeyed a pretrial order by not providing information about Finley's prior arrests and police brutality complaint. In response to a pretrial motion by Dean, the district court ordered the government to disclose any felony convictions or convictions which pertained to the credibility of the witnesses. The Court also ordered the government to ask Finley whether he had ever made similar allegations of police brutality. The government responded that it had asked Finley about possible brutality complaints and that it had no information that any had been made.

On direct examination at trial Finley testified that before the incident with Dean he had been arrested for burglary in Dallas and he had filed a complaint charging police brutality in Phoenix. On cross-examination Finley testified that he was arrested for obstruction of justice in an incident in Phoenix similar to this case. Finley had sworn before the grand jury and in a deposition that he had been arrested only for minor traffic violations.

Contrary to Dean's assertions, however, the government did not disobey the court order. Finley had never been convicted and it is not disputed that he lied when questioned concerning possible police brutality complaints. Furthermore, Dean was not prejudiced by Finley's earlier lies because that misconduct was put before the jury and Dean questioned Finley in the jury's

presence concerning his prior arrests and complaint. If anything, as the trial judge noted when Dean moved for a mistrial, the manner in which the information was disclosed aided Dean's effort to discredit Finley. The difficulty facing Dean's counsel and stressed by the government throughout the trial was not Finley's testimony but the testimony of the three impartial witnesses. This argument is without merit.

Dean contends that the government disobeyed a pre-trial order to deliver all information pursuant to *Brady v. Maryland,* 373. U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Dean claimed for the first time in his motion for new trial that 'he believed Montague's grand jury testimony and police report contained such information.

Pretermitting other difficulties with Dean's claim, this Court has on numerous occasions held that *Brady* rights are not denied where the information was fully available to the defendant and his reason for not obtaining and presenting such information was his lack of reasonable diligence. *United States v. Fogg,* 652 F.2d 551, 559 (5th Cir.1981); *cert. denied* 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); *United States v. Brown,* 628 F.2d 471, 473 (5th Cir.1980). In *Fogg* this court rejected defendant's argument that he did not know of certain grand jury statements made by two trial witnesses. Both witnesses testified for the government. The Court noted that given the defendant's close relationship with the witnesses he could have obtained these statements before trial. *United States v. Fogg,* 652 F.2d at 559. Here Montague testified for Dean and could easily have told him the content of his police report and grand jury statements. Dean's *Brady* claim fails.

Finally, Dean argues that the government's implication in closing argument that Dean later destroyed the photographs he had taken of Finley seriously prejudiced his defense. The government's attorney stated:

[R]emember that Deputy Dean testified that he did take photos of Mr. Finley and clipped them to his report, where are those photos? We don't know. We haven't had an opportunity to view the injuries that Mr. Finley received. Where are those photos? We don't know. That's up to you.

Immediately after these statements were made, the district court instructed the jury as follows:

I guess it would be only fair for me to say at this point that these photos were in the—not in the custody of Mr. Dean. But after they were attached to the record, they became the record of the Parish. And they were not in Mr. Dean's custody or control. They were subpoenaed, and the Parish, who was their custodian, said they cannot be found. Now, I think it is only fair to relate that to you in view of the statement that Counsel made; however, I must tell you that it was not the responsibility of the defendant to keep those pictures once they were made part of the record. And there certainly [has] been no evidence in the case that their failure to be brought to trial is the fault of Mr. Dean, the defendant herein, because he wasn't the custodian of those records. So I don't think you can draw any inference against Mr. Dean for the fact that those photos weren't made available to you.

Dean did not object to the adequacy of these instructions. He now argues that the prejudice was not curable by instructions. We have on numerous occasions held that even if a prosecutor's closing remarks are prejudicial, such error may be cured by the judge's instructions. *United States v. Shackelford,* 709 F.2d 911, 914 (5th Cir. 1983), *United States v. Apodaca,* 666 F.2d 89, 97 (5th Cir.), *cert. denied* —— U.S. ——, 103 S.Ct. 53, 74 L.Ed.2d 58 (1982). We do not suggest that instructions can cure all illness. The question is answerable only in the context of trial. The instructions here were prompt, in plain language and to the point. Viewed in the context of this trial, we are persuaded that even if the prosecutor's inference was improper it was adequately cured by the court's instructions.

AFFIRMED.