625 So.2d 190 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Bennie L. COKER, Defendant-Appellant.
No. CR93-251.
Court of Appeal of Louisiana, Third Circuit.
June 16, 1993.
Writ Denied September 17, 1993.
*191 Monique Yvette Metoyer, Alexandria, for State of La.
Richard G. Fowler, Alexandria, for Bennie L. Coker.
Before GUIDRY and WOODARD, JJ., and CULPEPPER,[*] J. Pro Tem.
WOODARD, Judge.
The defendant, Bennie L. Coker, was charged by grand jury indictment dated June 18, 1992, with malfeasance in office, a violation of La.R.S. 14:134, second degree battery, a violation of La.R.S. 14:34.2, and simple battery, (two counts), violations of La.R.S. *192 14:35. Prior to trial, all charges except the malfeasance charge were dropped by the State. The defendant waived jury trial and was tried by Judge Alfred A. Mansour on January 8, 1993. On January 25, 1993, the defendant was found guilty as charged. The court suspended the imposition of sentence, pursuant to La.C.Cr.P. art. 893, and placed the defendant on supervised probation for a period of one (1) year. In addition, the defendant was ordered to pay a fine of five hundred ($500.00) dollars plus court costs, and to pay a monthly probation supervision fee of twenty ($20.00) dollars. From this ruling of the trial court, the defendant now appeals, alleging two (2) assignments of error: the trial court erred in (1) admitting into evidence Chief Coker's oath of office; and, (2) finding defendant guilty of malfeasance when the evidence was insufficient to support the conviction.

FACTS
On April 3, 1992, Officer James Ledet and Deputy Gary Bradford, of the Glenmora City Police, responded to a disturbance call at the home of Mr. Chris Woodham. When the officers arrived at the location, they found that Woodham was inside the mobile home and was involved in an altercation with a female companion. Mr. Billy Marshall was also inside the trailer and was attempting to separate Woodham and the woman. Both Woodham and Marshall appeared to be intoxicated and stated that they had been drinking during the day. The officers asked Woodham and Marshall to accompany them to police headquarters. The officers were in the process of securing an arrest warrant for the two men on charges of criminal damage to property, which stemmed from an incident earlier the same evening. The suspects were not placed under arrest at the trailer. Woodham was transported in Officer Ledet's vehicle, while Marshall followed in his personal vehicle, to effect an arrest. Deputy Bradford followed the other two vehicles in his squad car. The suspects were cooperative and offered no resistance. Chief Bennie Coker had been informed of the disturbance and departed for the scene. While en route to the station, Officer Ledet radioed Chief Coker that the officers and subjects were proceeding to the town hall. Chief Coker arrived at the station at the same time the other three vehicles reached the station. Woodham exited Officer Ledet's vehicle and was approached by Chief Coker. Chief Coker began to curse Woodham, while Woodham said nothing, and the chief backed Woodham against Ledet's vehicle. Chief Coker slapped Woodham several times across the arms and face. Woodham ran from the scene toward the railroad tracks. Chief Coker yelled for Woodham to "come back or he was gonna whip his ass." Woodham stopped and began to walk back toward the station. Chief Coker then turned and approached Marshall, who was standing beside a police vehicle. Chief Coker began to slap Marshall. Marshall made no provocative or aggressive moves toward Chief Coker. Chief Coker then picked Marshall up and threw him backwards, over the hood of the police unit.
When Woodham returned to the police unit, he was led into the station by Deputy Bradford. Officer Ledet escorted Marshall into the station. The suspects were arrested and placed in the front cell of the jail. Chief Coker secured a key to the cell and attempted to unlock the door. The chief wanted to continue his attack on the two suspects, who were locked in the cell. Woodham grabbed the bars of the cell door and held it closed. The chief braced himself against a wall and began to push on Woodham's hands and arm in an attempt to force open the door. Chief Coker also struck Woodham's fingers with his fist. Deputy Bradford smelled the odor of an alcoholic beverage on Chief Coker's breath. Deputy Bradford eventually persuaded Chief Coker to leave the cell area.
As a result of the incident, Marshall received injuries to his right leg and ankle. Woodham sustained injuries to his neck, jaw, forearm and fingers.

ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in admitting Chief Coker's signed Oath of Office into evidence. During the trial, the State asked the court to take judicial notice of the oath, because the oath is a public record. The defendant objected, noting that *193 the State did not provide the oath in response to defendant's discovery request. The court overruled the objection and admitted the document.
Discovery of such documents by the defendant is governed by La.C.Cr.P. art. 718, which states:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection.
The defendant filed a Motion for Bill of Particulars and Motion for Discovery and Inspection in the trial court. In alleging the failure of the State to provide notice that it intended to use the oath of office at trial, the defendant particularly refers to the State's answer to paragraph number six in defendant's Motion for Discovery. This paragraph stated that:
Defendant requests that he be permitted to inspect, copy, examine, test scientific, photograph or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the State and which are favorable to the Defendant and which are material and relevant to the issue of guilt or punishment or are intended for use by the State as evidence at the trial, or were obtained from or belong to the Defendant.
In its answer, the State responded that:
The State at this time is not in possession of evidence favorable to the defendant.
These defense requests and the State's responses were provided approximately three and one-half months prior to the start of the defendant's trial.
When the State sought to introduce the oath of office at trial, defense counsel stated:
BY MR. FOWLER: They ... it might be public record but as for the State introducing it into evidence today, they haven't given it to me. I asked them to give me the documents that you intend to use at the trial of this matter. Nay. Nothing. This was not included. If you introduce it now I suggest to you, strenuously, that they have led the defense to believe that they did not intend to use it and I have based my strategy in connection with the defense of this case on along the lines that they were not intending to use it. To permit it now is depriving him of the right to a fair trial. Adequate notice as to what he was accused of and what they were gonna use as evidence against him, directly violates the Motion of Discovery and Inspection.
On appeal, the defendant seeks to expand on the objection made at trial, claiming that, had he known the State intended to use the oath, the defendant would have demanded a jury trial and "would not have stipulated to the testimony of the State's witnesses and reports, especially the testimony of one of the alleged battery victims."
We note that the State's answer to defense request number six was neither vague nor misleading. The answer responded to only one specific portion of the request and made no reference to the other information contained in the defense request. This answer, while incomplete, could not have misled counsel concerning the other items which were not mentioned in the State's response.
Failure of the State to comply with discovery procedure will not automatically command reversal, rather the court must review the record for a determination of whether any prejudice resulted from noncompliance which caused the trier of fact to reach the wrong conclusion. State v. Ray, *194 423 So.2d 1116 (La.1982). The appropriate remedy, if the defendant were dissatisfied with the State's incomplete response, would have been to submit a supplementary discovery request or to have filed a motion to compel discovery in order to force the State to fully answer the defense request. Considering the fact that the defense had a lengthy period between the time it received the State's response and the beginning of trial, the defendant had ample opportunity to assess the State's answers and determine whether additional information was necessary. The defendant, therefore, suffered no prejudice as a result of the incomplete answer.
In addition, the defense fails to note that the oath of office was signed by the defendant on January 4, 1991. The defendant cannot claim surprise at the existence of a document which he personally executed.
Concerning any assertion of surprise at the introduction of the oath, we note that the defense counsel failed to support his claim that he would have conducted the defense in a different manner. Counsel provided no valid basis for assuming that the State did not intend to use the oath at trial, and such an intention cannot be inferred, based solely on a less than completely responsive answer to discovery. Paragraph six of the discovery request by the defendant clearly sought three types of evidence. These were 1) items favorable to the defendant, and which were also material and relevant, 2) those intended for use by the State at trial and 3) those items which were obtained from or belonged to the defendant. The State responded only to part one of the request. The State did not respond that it possessed no items in categories two and three, and such a response cannot reasonably be inferred by the complete absence of any response to parts two and three of the defense request. Defense counsel propounded the request and must be held responsible for reviewing and evaluating the State's responses. Permitting any party seeking discovery to benefit at trial from its failure to pursue obvious deficiencies in responses to discovery would encourage "sandbagging" by that party. Under such a scenario, any request made in any discovery motion, to which no answer was given, would render inadmissible all of the evidence that was the object of the request. This is a patently unfair and unacceptable result and, therefore, is precisely the reason why the burden is placed on the party seeking discovery to aggressively follow up the initial discovery request with either a supplementary request or a motion to compel discovery.
The defense also fails to indicate how knowledge of the intended use of the oath by the State would have affected its choice of a judge or jury trial, or how the defense's posture toward the factual assertions of the State's witnesses concerning medical testimony and events surrounding the offense would have been different had the defense known of the intended use of the oath.
Accordingly, the defense has shown no prejudice as a result of the introduction of the defendant's signed oath of office. This contention is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant contends that the court erred in finding the defendant guilty of malfeasance, as there was insufficient evidence presented to support the conviction. For the reasons stated below, we affirm the trial court.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex *195 rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
§ 134. Malfeasance in office
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
Under La.R.S. 14:134, the state was required to prove (1) that Chief Coker held an official public office, and (2) that Chief Coker violated a lawfully required duty by performing it in an unlawful manner.
Defendant contends that the state failed to prove the essential elements of the crime of malfeasance in that the state failed to show that defendant was in violation of "a duty lawfully required of him" through: (1) the introduction of a statute or provision of law which delineates an affirmative duty upon the official and (2) the showing that the duty was expressly imposed by law upon the official.
The record shows that Bennie Coker was Chief of Police for the Town of Glenmora. The record further shows that Chief Coker intentionally used excessive and unnecessary physical force in dealing with the two suspects, that Chief Coker's attacks on the two men were completely unprovoked and continued after the suspects were placed in the jail cell, and that only the intervention of Chief Coker's subordinates caused the chief to terminate his battery of the two suspects. Chief Coker's violent, abusive conduct towards the suspects clearly constitutes battery, in violation of state law.
However, the defendant contends that a public official can never be convicted of malfeasance unless a specific criminal statute exists which defines the conduct as malfeasance. In the defendant's case, he asserts that he cannot be found guilty of malfeasance for maliciously battering helpless prisoners unless a statute exists which requires that "law enforcement officials shall ensure the safety, health and well being of all citizens or persons in their presence or custody, and ensure no batteries are committed upon the person who is in their custody or presence." Such a requirement would render the offense of malfeasance meaningless and unenforceable. Utilizing the defendant's reasoning, every conceivable function and duty of a public official would have to be specifically included in a prohibitory statute in order to successfully "notify" the official of his potential liability for malfeasance. This is clearly impossible in practice and was obviously not the intent of the legislature when enacting the malfeasance statute.
In fact, only two offenses are specifically delineated in Louisiana as constituting malfeasance. See La.R.S. 14:134.1 and La.R.S. 14:134.2. In all other cases, the specific duties required to support conviction for malfeasance are derived from other sources.
Specific criminal statutes and ordinances have been used to support malfeasance convictions. State v. Perret, 563 So.2d 459 (La. App. 1 Cir.1990); State v. Braxton, 458 So.2d 1017 (La.App. 3 Cir.1984). The state contended that Chief Coker battered the suspects, during the arrest process, while acting in his official capacity, in violation of La.R.S. 14:35.
During oral argument, a question arose concerning Chief Coker's role in the events on the night of the offense. The defendant contended that the suspects were not under arrest when the initial batteries occurred and that, therefore, the chief was not performing any official duty as required for conviction of malfeasance.
As previously noted, Chief Coker was informed of the disturbance at the Woodham trailer and was en route to the scene when Officer Ledet radioed the chief and informed him that the officers and suspects were proceeding to the town hall. When the chief *196 responded to his officer's call by going to the station and by confronting and battering Woodham and Marshall, Chief Coker interjected himself into the detention and arrest process, and these men clearly felt that they were under police custody and control and not free to leave. Testimony revealed that when Woodham ran from the scene, Chief Coker ordered him to "come back or he was gonna whip his ass," to which Woodham replied, "I'm afraid, I just don't want to be hit any more." Chief Coker was obviously not issuing the order as Bennie Coker, the private citizen, and Woodham obviously was obeying the order of Bennie Coker, the Chief of Police. A seizure of the suspects had taken place at that point, even though they had not yet been officially placed under arrest. A suspect's constitutional right to be free from the excessive use of force attaches during a seizure or investigatory stop as well as after arrest. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). We therefore conclude that Chief Coker was engaged in the performance of his official duty to detain and arrest suspected violators at the time of the incident, and that Chief Coker performed this duty in an unlawful manner by battering them.
In brief to this court and during oral argument, the state further noted other statutory mandates allegedly violated by the defendant during the battery. The state noted that the chief of police has "general responsibility for law enforcement in the municipality and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws." La.R.S. 33:423; Cogswell v. Town of Logansport, 321 So.2d 774 (La. App. 2 Cir.1975). Further, the state submitted that an arrest warrant shall be executed only by a peace officer, La.C.Cr.P. art. 204, that a peace officer may arrest without a warrant under certain circumstances, La. C.Cr.P. art. 213, and that a person making a lawful arrest must use reasonable force to effect the arrest and detention, La.C.Cr.P. art. 220, and Comment "B" thereto.
The defendant argues that none of these statutes may be considered by the court because they were not specifically included in the indictment or bill of particulars, nor were presented during the defendant's trial as the source of the alleged duty "not to batter prisoners." Such specific pleading is unnecessary.
In State v. Didier, 259 La. 967, 254 So.2d 262 (1971), a sheriff was charged with malfeasance for failing to halt the commission of crimes about which he had knowledge. The state did not allege a specific statutory mandate which required that the sheriff arrest the offenders. Justice Dixon, writing for the supreme court, noted, sua sponte, that "if a statute were needed," R.S. 33:1435 articulates the duty of the sheriff to apprehend public offenders. By noting this statute, which was not presented by the state, and by the language used in his statement, Justice Dixon clearly implied that it is unnecessary for the state to allege a specific statutory mandate setting forth the proposition that a law enforcement officer has the duty to apprehend offenders. Later, in State v. Perez, 464 So.2d 737 (La.1985), Justice Dixon again noted that, in some cases, certain duties are "inherent in the nature of the office." Similarly, the state contends that La.R.S. 33:423 and the Code of Criminal Procedure articles cited establish Chief Coker's duty to arrest offenders and provide standards of conduct to be followed when making arrests. The federal court for the Western District of Louisiana has also noted that "police officers have an affirmative duty to enforce the law." Thomas v. Frederick, 766 F.Supp. 540 (W.D.La.1991).
Accordingly, this court can, and does, take notice of the specific statutory obligations presented by the state in support of its claim that Chief Coker had an affirmative duty to apprehend offenders and was bound by statutory and constitutional mandates not to batter suspects in his custody. The evidence presented at trial supports the conclusion that Chief Coker had a duty to apprehend, detain, and arrest suspects, which was both statutorily imposed and inherent in the nature of the office of Chief of Police, and that he willfully and maliciously performed these duties in an unlawful manner by battering the two suspects.
In addition to the statutory requirements supporting the state's contention that Chief *197 Coker performed his duty in an unlawful manner by battering the suspects, there were other prohibitions regarding the chief's conduct. As noted by the trial court, Chief Coker's oath of office required that he "support the Constitution and Laws of the United States and the Constitution and Laws of this state," and that he "faithfully and impartially discharge and perform all the duties incumbent on [him] as chief of police."
The defendant vigorously argues that the oath of office does not delineate any affirmative duty on Chief Coker which would provide the basis for a malfeasance conviction. As noted, however, the "duty" required of Chief Coker was not the "duty not to batter suspects" as claimed by the defendant, but was the duty to question and apprehend suspects. The oath of office requires that the chief perform these duties in a faithful and impartial manner.
In State v. Melerine, 236 La. 881, 109 So.2d 454 (1959), the president of a parish police jury was found to have certain purchasing duties in connection with his office. The court stated that his oath of office required that he conform to the standards of conduct contained in the oath when performing the purchasing duties. Similarly, the state argued that Chief Coker's oath of office required him to perform his duty to apprehend suspects in a manner consistent with the standard of conduct contained in the oath.
The oath of office has also been held to independently express certain affirmative duties. In Perez, supra, a judge was found to be under an express, affirmative duty not to interfere with or obstruct the grand jury, based on his oath of office. In State v. Perret, 563 So.2d 459 (La.App. 1 Cir.1990), an employee of the Department of Wildlife and Fisheries was found to have an express affirmative duty not to interfere with the execution of provisions of La.R.S. 56:433, pursuant to his oath of office.
We further note that, by battering Woodham and Marshall, Chief Coker engaged in conduct which has been found to be violative of the Fourth Amendment's prohibition against unreasonable search and seizure. When police officers use unreasonable force, and the police conduct shows reckless and callous indifference to the rights of others, that conduct violates constitutional prohibitions against unreasonable seizures. In such cases, the battered suspects have a federal civil remedy, as provided in 42 U.S.C. § 1983. Graham, supra; Frederick, supra. The Frederick court noted that such attacks by police officers shock the conscience and demonstrate a deplorable disregard for the constitutional rights of ordinary citizens, and that the most basic freedoms of our constitutional system are violated when an officer can brutalize ordinary citizens with impunity. The use of excessive force can also subject the battering officer to federal criminal prosecution under 18 U.S.C. § 242, for violating a suspect's constitutional right to due process of law. United States v. Dean, 722 F.2d 92 (5th Cir.1983). Certainly, when the chief performed in this fashion, he did so unlawfully, misused and abused his power, and thus, is guilty of the misuse and malfeasance of his office.
We conclude that Chief Coker failed to support the laws of the United States and of the State of Louisiana, as was required by his office. Chief Coker's reprehensible attack on these suspects constituted a breach of his most fundamental dutythe duty to respect the rule of law and to protect all citizens within his jurisdiction from violence against their persons. The defendant had an express, affirmative duty to investigate criminal activities and to apprehend suspects. The defendant performed those duties in an unlawful manner by maliciously battering two suspects.
We reject the defendant's contention that affirming the trial court's finding will subject police officers to criminal malfeasance prosecutions for all violations of the law. Clearly, the malfeasance statute requires that the offender be acting in his official capacity and engaged in the performance of a duty which is required by law, in order to support conviction. The jurisprudence indicates that prosecution for malfeasance is reserved for those cases in which a public official has blatantly abused the authority of his office and violated the public *198 trust by his direct, personal acts or failure to act.
Without question, the defendant's unprovoked and unjustified attack on these two helpless suspects constituted one of the most flagrant abuses of police authority conceivable. The chief's conduct, in full view of his subordinates, demonstrated a fundamental disrespect for the constitutional rights enjoyed by our citizens, and set a potentially-dangerous and wholly unacceptable example to other department personnel.
Accordingly, we find that the state proved all of the elements of La.R.S. 14:134.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
In this malfeasance case, in order to convict the State was required to prove that (1) the defendant held a public office, i.e., Chief of Police; (2) he had an affirmative duty to arrest Woodham and Marshall; and, (3) after undertaking to arrest, he performed his duty to arrest in an unlawful manner.
The record reflects that Chief Coker was not initially required to participate in the arrest of Woodham and Marshall and in fact was not present when they were first taken into custody. At that point in time, no affirmative duty to arrest was required of Chief Coker. However, upon being advised that the two subjects had been taken into custody, the defendant voluntarily elected to participate in their arrests and in furtherance thereof proceeded to the town hall where the arrestees were to be booked and incarcerated pursuant to La.C.Cr.P. art. 228. Once Chief Coker elected to participate in the arrest and booking of Woodham and Marshall, he was required to perform this duty in a lawful manner. The record clearly reflects that after undertaking the duty to arrest and book, Chief Coker performed these duties in an unlawful manner and is therefore guilty of malfeasance in office, in violation of La.R.S. 14:134. For these reasons, I respectfully concur.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.